# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America | |
| v. | Case No. 24-mj-1204 |
| **PETER CELENTANO** | |
| *Defendant* | |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### <u>COUNT 1</u>
### (Illegal Possession of Machineguns)

On or about September 29, 2024, in the Western District of New York, the defendant **PETER CELENTANO** did knowingly possess machineguns, to wit: two (2) machinegun conversion devices used to modify semi-automatic firearms to fire as fully automatic weapons, enabling said firearms to automatically shoot more than one shot without manual reloading, by a single function of the trigger; and fifty-nine (59) AR-style lower receivers containing automatic sear pin holes.

**All in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).**

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

 

**JOHN NOWAK** *Digitally signed by JOHN NOWAK*
*Date: 2024.10.17 10:37:31 -04'00'*

*Complainant's signature*

JOHN J.C. NOWAK
SPECIAL AGENT
<u>Bureau of Alcohol, Tobacco, Firearms, Explosives</u>
*Printed name and title*

Criminal Complaint submitted electronically by e-mail in .pdf format. Oath administered, and contents and signatures attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1.

Date: <u>October 17, 2024</u>

City and State: <u>Buffalo, New York</u>

*Judge's signature*

HONORABLE JEREMIAH J. MCCARTHY
<u>UNITED STATES MAGISTRATE JUDGE</u>
*Printed name and title*

## AFFIDAVIT

STATE OF NEW YORK )
COUNTY OF ERIE      )   SS:
CITY OF BUFFALO    )

**I, JOHN J. NOWAK**, Special Agent of The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, having been duly sworn, state as follows:

## AGENT BACKGROUND

1. I am a Special Agent with ATF and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1), et seq. and Title 21, United States Code, Section 801. I further state that I am the kind of Special Agent as delineated in Title 18 United States Code, Section 3051.

2. I have been an ATF Special Agent since January of 2021. I am assigned to the Buffalo Field Office, New York Field Division. I am a graduate of the ATF National Academy, and the Criminal Investigator Training Program located at the Federal Law Enforcement Training Center in Glynco, Georgia. My primary duties as an ATF Special Agent include investigating violations of federal firearms laws including illegal firearms

trafficking, unlawful possession of firearms, and the possession of firearms during the commission of drug trafficking crimes and crimes of violence.

3. During my time as an ATF Special Agent, I have participated in investigations, including the execution of search warrants and arrest warrants where illegally purchased/trafficked firearms, narcotics, electronic scales, packaging materials, cutting agents, books/ledgers indicating sales, receipts, computers, cellular telephones, and other items used to facilitate firearms and narcotics trafficking were seized. I have personally conducted and/or assisted in investigations of criminal acts involving violations relating to armed individuals that were involved in the distribution of controlled substances, including heroin, cocaine, methamphetamine, and other substances, in violation of federal drug laws, including Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 922 and 924. Additionally, I have participated in interviews and debriefings of individuals involved in firearms and narcotics trafficking. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the illegal trafficking of firearms and narcotics.

4. I make this affidavit in support of an application for a Criminal Complaint charging Peter CELENTANO with violations of Title 18, United States Code, Sections 922(o) (illegal possession of machineguns) and 924(a)(2). I am thoroughly familiar with the information set forth in this affidavit because of my personal investigation, discussions with other law enforcement officers or statements provided by other law enforcement personnel, which have been reported to me, and examination of various documents and records in this

2

investigation. Based upon that information, I assert that the articulated facts establish grounds for the issuance of a Criminal Complaint for Peter CELENTANO. This affidavit is intended to show simply that there is sufficient probable cause for the requested Criminal Complaint and does not set forth all of my knowledge about this matter. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## BACKGROUND OF THE INVESTIGATION

### SEARCH WARRANT OF 23 ROCHESTER ST.

5. On September 29, 2024, New York State Police (NYSP), Genesee County Sheriff's Office, along with members of ATF, executed a New York State search warrant at 23 Rochester St. Bergen, NY 14416, the known residence of Peter CELENTANO. Members of law enforcement approached the residence, knocked, and announced themselves. Law enforcement was greeted by A.C., the wife of Peter CELENTANO, and her child. Law enforcement removed A.C. and her child from the residence without incident, which allowed law enforcement to clear the property and render it safe.

6. During the search of the residence, law enforcement recovered numerous items, including but not limited to, two (2) 3D printed pistol frames, firearm parts and accessories, ammunition reloading equipment, an AR 80% style Jig and drill (described below in paragraph 7), a drill press, and various other tools related to the manufacturing of firearms. Among the items recovered from the residence were two (2) additional 3D printed devices. These devices were recovered within a black Apache weatherproof protective case from the

upstairs closet adjacent from the bathroom. These devices, one (1) blue in color and one (1) white in color, are consistent with the size and shape of machinegun conversion devices.

7.  Your affiant is familiar with the 80% types of Privately Made Firearms, most often referred to as "ghost guns" because they do not have serial numbers and cannot be traced by ATF. ATF officially describes these firearms as Privately Made Firearms (PMF). These firearm receivers are purchased legally, usually in on-line transactions, in a block form and are only 80% finished, thus not making them an actual firearm as defined by federal law. These receiver blocks are then completed with household tools (Drill, Rotary Tool. Etc.) being drilled out and cut so that the internal parts of a firearm (springs, trigger assembly, etc.) can be inserted. The individual making these PMFs then purchases the other firearm components (slide, barrel, trigger, etc.) to complete the firearm. Typically, these transactions are done online with the manufacturer of Privately Made Firearms receiving the parts needed for completion through common carriers or the United States Post Office.

8.  Through my training and experience, I am familiar with conversion devices similar to the two (2) recovered from the residence. I am further aware that such devices have been designed and created for the sole purpose of converting semi-automatic AR-type firearms into fully automatic machineguns. These devices vary by design, appearance, and name, but all, when properly installed on a semi-automatic AR-type firearm, convert a semi-automatic firearm into a fully-automatic firearm capable of firing more than one shot with a single pull of the trigger. Once the device is placed in the receiver, the upper assembly is re-attached to the receiver. The conversion process can take less than 60 seconds to complete.

4

The installation of this device is designed so that the rear take-down pin lug in an AR-type firearm upper assembly holds the device in place within the fire-control cavity. When an M16-type bolt carrier strikes the top of the device as it moves forward into battery, the front portion of the device moves down, thereby pushing down on the disconnector and releasing the hammer from under the disconnector hook. As long as the trigger is held back, the rearward movement of the bolt carrier will cock the hammer under the disconnector hook. The forward movement of the bolt carrier will strike the top portion of the device just as the bolt locks in battery, automatically releasing the hammer and firing the weapon. When the trigger is released, the sear surface of the trigger will capture the hammer in the cocked position negating the operation resulting from the interaction of the swift link with the disconnector. In my training and experience, I also know that these devices are referred to by different names, including but not limited to: "auto sears," "convertors," "Lightning Links," "conversion devices," and "Swift-Links."

9. Based on information gathered throughout the investigation as well as photographs identified from CELENTANO's social media accounts, law enforcement believed that additional items of evidence were moved or disposed of prior to the execution of the search warrant. Specifically, during the investigation, law enforcement saw photographs associated with CELENTANO that depicted a work bench, additional 3D printed pistols, and AR-type firearms that appeared to be converted into fully automatic machine guns. Their absence during the search of the residence led investigators to believe the items were secreted or stored at another location.

10. Prior to the execution of the search warrant at 23 Rochester St., law enforcement obtained a search warrant for a GPS monitor to placed on the vehicle belonging to Peter CELENTANO. In reviewing CELENTANO's movements, investigators observed what appeared to be a pattern that seemed inconsistent with CELENTANO's daily routine. Per the GPS monitor, a vehicle was observed traveling onto a property off Lakeshore Rd., Lyndonville, NY. The monitor was observed to travel onto the property, stay for approximately forty minutes, and then leave. Based upon this information, law enforcement determined the property off Lakeshore Rd. to be a potential dumping/stash sight of evidence.

11. Law enforcement proceeded to the property located at 11652 Lakeshore Rd., Lyndonville, NY. Law enforcement were able to contact the landowner, G.S., who agreed to meet them at the property. Once on location, G.S. provided permission for law enforcement to search his property. Law enforcement proceeded onto the property, accompanied by G.S., and came upon an unlocked RV. Within the RV were two black totes with yellow lids. G.S. stated that they were not his and that he gave no one permission to store anything on his property. Further down the property, law enforcement discovered a shed. Within the shed, law enforcement uncovered numerous black totes with yellow lids, a work bench with stickers adhered to the front of it, as well as black weatherproof cases with padlocks attached to them. None of these items belonged to the landowner, G.S.

12. While on scene, law enforcement received a phone call from M.S., the son of the landowner G.S., who informed law enforcement of additional items that were contained within his apartment located at 567 East Ave Upper Apt., Medina, NY 14103. M.S. told law

enforcement to come recover the items from his apartment. Law enforcement proceeded to 567 East Ave Upper Apt., Medina, NY 14103.

13. Upon arrival at 567 East Ave, law enforcement met with M.S. and G.S. within the upper apartment. M.S. allowed investigators to take possession of the items that were concealed there. M.S. informed law enforcement that it was Peter CELENTANO who had concealed the items there. Law enforcement interviewed M.S., who provided the following information. M.S. stated that he was aware CELENTANO was in possession of 3D printed pistols and machineguns, that he created firearms from 80% lowers (described above in paragraph 7), and that he utilized a Twitter/"X" account under the username of Freeman13372. M.S. stated he assisted CELENTANO transferring the items into his apartment. M.S. stated that CELENTANO was storing the items at his apartment because he was in the process of moving. Law enforcement took possession of the items CELENTANO secreted within M.S.'s apartment, including but not limited to: two (2) black totes with yellow lids, two (2) 3D printers, two (2) plate carries, over twenty (20) 3D printed handguns, additional weatherproof containers with padlocks attached to them, among other items.

14. Law Enforcement was also contacted by a B.M. at 2117 S. Lyndonville Rd., Lyndonville, NY 14098. B.M. stated that CELENTANO called him and asked if he could store some items on his property. B.M. allowed CELENTANO to store eight locked weatherproof containers inside of his shed at 2117 S. Lyndonville Rd. B.M. stated that he asked CELENTANO why they were locked and CELENTANO replied that they were expensive camera equipment. B.M. stated that he received a call from his friend M.S. stating

that if CELENTANO dropped anything off at my property to let the police know. B.M. turned over the eight weatherproof cases to law enforcement.

15. On September 30, 2024, the original NYS search Warrant for 23 Rochester was amended to include the locked boxes recovered from the property located at 11652 Lakeshore Rd, Lyndonville; M.S.'s apartment at 567 East Ave, Medina, NY; and B.M.'s shed located at 2117 S. Lyndonville Rd., Lyndonville, NY. Within the locked weatherproof containers, law enforcement uncovered numerous AR-style lower receivers, 3D printed handguns, and additional firearm parts and accessories. Further examination of these AR-style lower receivers revealed that some contained two M16-type automatic sear pin holes properly located above the selector lever holes on the left and right sides of the receiver. The automatic sear pin holes serve only to provide a mounting position for the automatic sear on select fire M16-type machineguns. The presence of automatic sear pin holes on the receiver classifies it as the receiver of a "**machinegun**." ATF classifies machinegun receivers based upon the design feature that results in automatic fire. For this reason, ATF classifies any AR-type receivers with properly located automatic sear pin holes as machinegun receivers. Properly located automatic sear pin holes constitute the critical defining feature of an M16-type machinegun receiver. Approximately fifty-nine (59) AR-style receivers containing the "third pin hole" were observed from the locked weatherproof containers.

16. On October 7, 2024, law enforcement contacted M.S. and conducted an additional interview. M.S. again stated that he was aware CELENTANO liked to build AR-style firearms out of 80% lowers and that he also was aware CELENTANO liked to build 3D

8

printed handguns. M.S. was also aware CELENTANO was building machineguns and that he was testing them at the property located off Lakeshore Rd.  M.S. stated that CELENTANO provided him a total of nine (9) lower receivers and that two of those lower receivers did contain the "third pin hole," making them machineguns. M.S. stated he knew of the 3D printed auto sears (machinegun conversion devices) possessed by CELENTANO and that he brought them to property located off Lakeshore Rd. to use. M.S. stated that he utilized the machinegun conversion device himself and confirmed that it did cause a firearm to function in a fully automatic capacity. M.S. stated that his father, G.S., disposed of the firearms that were provided to him by CELENTANO.  During the interview M.S. was able to contact his father, G.S., who stated that he disposed of the firearms off the Beals Rd. bridge into the Erie Canal.

17. On October 9, 2024, ATF and Genesee County Sheriff's Office, with assistance from the NYSP SORT dive team, began to search the Erie Canal beneath the bridge located at Beals Rd., Medina, NY 14103. A cardboard box was located and retrieved from the bottom of the canal under Beals Rd. bridge. Law enforcement retrieved the box and its contents. Law enforcement recovered ten (10) AR-style receivers, one (1) unmarked handgun, magazines, and additional firearm parts.

18. On October 10, 2024, your affiant provided a photo of the two (2) machinegun conversion devices described within paragraph 6 and a photo containing eleven of the AR-style receivers to the ATF's Firearms and Ammunition Technology Division (FATD). Based on the photographs, FATD was able to state that the image containing the two (2)

machinegun conversion devices were consistent with machinegun conversion devices that have been previously classified by FATD as machinegun conversion devices. FATD also provided that within the photograph containing the eleven AR-style receivers, ten (10) of them appeared to be machinegun receivers via the third pin holes. This was a preliminary classification, and law enforcement will send all items to FATD for an official determination. The photos your affiant provided to FATD are depicted below:



19.    Your affiant requested a records check from the ATF National Firearms Act (NFA) Branch to determine if Peter CELENTANO has or had any NFA weapons registered with the ATF. No record of Peter CELENTANO exists as ever having registered any NFA weapons.

10

20.     Based on the above information, your affiant submits there is probable cause to believe that Peter CELENTANO violated Title 18, United States Code, Sections 922(o) and 924(a)(2).

21.     I request that this affidavit and criminal complaint remain sealed until Peter CELENTANO is arrested, or the Court orders it to be unsealed, whichever occurs first.

John J. C. Nowak
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, Explosives

*Digitally signed by JOHN NOWAK*
*Date: 2024.10.17 10:38:43 -04'00'*

Subscribed and sworn to before me telephonically
this 17th day of October, 2024.

HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge

11